**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

MAGDALENA GONZALEZ-RODRIGUEZ,

    Plaintiffs,

      v.                            **CIVIL NO. 07-1118 (GAG)(BJM)**

JOHN E. POTTER, POSTMASTER
GENERAL, UNITED STATES POSTAL
SERVICE,

    Defendants.

---

**OPINION AND ORDER**

    Plaintiff, Magdalena González-Rodríguez ("González"), brought this action against her employer, the United States Postal Service ("USPS"), alleging retaliation and disparate treatment by reason of disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq., and Title VII, 42 U.S.C. § 2000e et seq. González also alleges violations to the Family Medical Leave Act of 1993, 29 U.S.C. § 2615, in the form of both interference and discrimination. Presently before the court is USPS's motion for summary judgment (Docket No. 50), González's opposition thereto (Docket No. 52), USPS's subsequent reply (Docket No. 71), and González's sur-reply (Docket No. 72). After reviewing the relevant facts and applicable law, the court **GRANTS IN PART** and **DENIES IN PART** USPS's motion for summary judgment (Docket No. 50).

**I.    Standard of Review for Summary Judgment & Local Rule 56**

    Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted).

    The moving party bears the initial burden of demonstrating the lack of evidence to support

1  the non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth

2  specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds

3  that some genuine factual issue remains, the resolution of which could affect the outcome of the

4  case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S.

5  242, 248 (1986). When considering a motion for summary judgment, the court must view the

6  evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party

7  the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment

8  stage, the court does not make credibility determinations or weigh the evidence. Id.

9       In disputes involving questions of motive or intent, the movant's burden is particularly

10  rigorous. Unsettled issues regarding motive and intent will often preclude summary judgment. See

11  Lipsett v. Univ. of P.R., 864 F.2d 881, 895 (1st Cir. 1988). Summary judgment may be appropriate,

12  however, if the non-moving party's case rests merely upon "conclusory allegations, improbable

13  inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d

14  17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

15  The court should deny summary judgment when the non-moving party "can point to specific facts

16  detailed in affidavits and depositions - that is, names, dates, incidents, and supporting testimony -

17  giving rise to an inference of discriminatory animus." Lipsett, 864 F.2d at 895.

18       Local Rule 56(b) requires a party moving for summary judgment to file "a separate, short,

19  and, concise statement of material facts [. . .] as to which the moving party contends there is no

20  genuine issue of material fact to be tried." D.P.R. L.R. 56(b). The movant must support each

21  statement with a citation to the record. Id. The non-movant has a corresponding obligation to

22  submit with its opposition "a separate, short, and concise statement of material facts" in which it

23  admits, denies, or qualifies the moving party's facts with reference to each numbered paragraph of

24  the moving party's statement. See D.P.R. L.R. 56(c). Additionally, the nonmoving party must

25  support each denial or qualification with a record citation. Id. Similarly, Local Rule 56(d) requires

26  that a party replying to the opposition to a motion for summary judgment "submit with its reply a

27  separate, short, and concise statement of material facts which shall be limited to any additional facts

28  submitted by the opposing party." The reply to the opposition to a motion for summary judgment

1  is subject to the same requirements as the opposition to a motion for summary judgment: specific

2  reference to each numbered paragraph of the opposing party's statement and support of each denial

3  or qualification through record citations.  See  D.P.R. L.R. 56(d).

4        While a party's failure to comply with these rules does not automatically warrant the granting

5  or denial of summary judgment, "parties ignore [the rules] at their peril."  Ruiz Rivera v. Riley, 209

6  F.3d 24, 28 (1st Cir. 2000).  The First Circuit has repeatedly held that the district court is justified

7  in deeming one party's submitted uncontested facts to be admitted when the other party fails to file

8  an opposition in compliance with Local Rule 56.  See, e.g., Fontanez-Nunez v. Janssen Ortho LLC,

9  447 F.3d 50, 55 (1st Cir. 2006); Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 4 (1st Cir. 2003);

10  Corrada-Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 43-44 (1st Cir. 2001); see also D.P.R. L.R.

11  56(e) (declaring that facts not properly controverted "shall be deemed admitted").

12        In this case, USPS complied with Local Rule 56(b) by filing a separate statement of

13  uncontested facts with proper references to the record.  See Docket No. 48.  González subsequently

14  filed an opposing statement of material facts, which was also properly supported, per the Local Rule.

15  See Docket No. 54, 1-32.  González's oppposition, however, also included an additional statement

16  of uncontested facts, set forth in separate numbered paragraphs and supported by record citations

17  as allowed by subsection (c) of Local Rule 56.  See Docket No. 54, 32-51.  USPS, in turn, filed a

18  reply memorandum of law in support of its summary judgment motion, but failed to submit a

19  separate statement of material facts to supplement it.  See Docket No. 71.  If USPS wished to

20  controvert any of the additional facts submitted by González in her opposition, its reply statement

21  had to "deny or qualify such additional facts by reference to the numbered paragraphs of the

22  opposing party's statement of material facts and unless a fact is admitted, [the reply statement had

23  to] support each denial or qualification by a record citation as required by subsection (c) of [Local

24  Rule 56]."  D.P.R. L.R. 56(d).  USPS failed to deny or qualify González's additional facts in the

25  manner required by Local Rule 56(d).  Therefore, this court shall deem admitted such additional

26

27

28

**Civil No. 07-1118 (GAG)(BJM)**                    4

material facts that are properly supported.[1]

## II.    Relevant Material Facts and Procedural Background

Consistent with the summary judgment standard, the court states the facts in the light most favorable to plaintiffs.  See Iverson, 452 F.3d at 98.  Additionally, in accordance with Local Rule 56, the court credits only facts properly supported by accurate record citations.  See D.P.R. L.Civ.R 56(e).  The court has disregarded all argument, conclusory allegations, speculation, and improbable inferences disguised as facts.  See Forestier Fradera, 440 F.3d at 21; Medina-Muñoz v. R.J. Reynolds Tabacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

González began working for USPS in October of 1977, in Queens, New York.  In 2000 she became an Administrative Clerk in the Expedited Services Office, in Carolina, Puerto Rico.  She worked there until June 2006, when she appears to have been transferred to a different office. Between March 2005 and June 2006, González was under the direct supervision of Sandra Figueroa ("Figueroa"), who was the Expedited Service Specialist at the Carolina office.  Also under Figueroa's direct supervision were Alida Rivera and Frank Trinidad, who held the same position as González.

In May 2005 and January 2006, González was diagnosed with severe persistent asthma.  She submitted certifications from her health care provider to that effect and obtained approval for "Family Leave" (or "FMLA leave") on August 25, 2005 and on January 26, 2006.  González's asthma was categorized by the FMLA Coordinator as a "Chronic Condition Requiring Treatment." González was approved for FMLA leave from August 25 to December 30, 2005, and from January 26, 2006 to January 26, 2007.  The certifications from her health care provider indicate that during periods of asthma exacerbation, which can last aproximately five to six hours, González is unable to perform her work duties.  González asserts that her condition substantially impairs her ability to breathe and speak, and that when she is experiencing an asthma attack as a result of emotional stress and other environmental factors she has to concentrate on inhaling, without speaking.

---

[1] The court denies plaintiff's request to strike defendant's reply memorandum in its entirety from the record.  See Docket No. 72.

In 2005 González applied for the Caribbean District Associate Supervisor Program ("ASP"), which trains USPS employees for first-time supervisory positions.  On October 7, 2005, Daisy García, ASP coordinator, wrote González to inform her that she had passed the ASP exam, as she obtained a mark of at least "minimal" on all three parts of the test: "Mathematical Computation," "Reasoning Skills," and "Written Communication."   On November 8, 2005, González was interviewed by the Review Committee for the Caribbean District ASP, composed of four management-level employees: Michael Mosca (Manager of Distribution Operations at NY-ISC, in Jamaica, New York), Betty Peek (Labor Relations Specialist, assigned to the Triboro District Labor Relations Department, in Brooklyn, New York), Vernon Ryland (Manager of Distribution Operations at the Brooklyn Processing and Distribution Center, in Brooklyn, New York), and Phyllis Morrissey (Manager of Customer Services at Rego Park Station, in Flushing, New York, and Chairperson of the Review Committee).  After the interview, on November 30, 2005, González received a letter from the manager of the training division informing her that she was not selected for the program.  González requested additional information about her non-selection, and on January 18, 2006, Phyllis Morrissey wrote González a letter indicating that she had been eliminated from the application process because she failed to demonstrate the required "human relations" skill criterion during the interview phase.

On February 13, 2006, González contacted the USPS's Equal Employment Opportunity ("EEO") Office and requested a copy of the PS-Form 2564-A, entitled "Information for Pre-Complaint Counseling."  In her PS-Form 2564-A, dated February 28, 2006, González wrote that she was alleging discrimination in the form of "[r]etaliation, reprisal, [and] disparate treatment."  The form invites the employee to identify the particular kind of discrimination that he or she is alleging by checking the box next to each applicable category: race, color, religion, national origin, sex, age, retaliation, or disability.  In her form, González only marked the box for "retaliation," and attached a letter where she alleged acts of retaliation and disparate treatment due to her prior EEO activity.  Specifically, González made reference to a prior EEO case which was finalized by settlement on February 5, 2005, and wrote that she was denied the opportunity to participate in the ASP as a result of this activity, though she was well qualified.  González also alleged that she was also denied the

1    opportunity to serve as Acting Expedited Services Specialist on the days when Figueroa was away

2    from the office.

3          On March 24, 2006, Figueroa made an entry in González's "Employee Key Indicators

4    Report" ("Key Indicators Report") to the effect that it was her intention to conduct a Predisciplinary

5    Interview ("PDI") with González regarding her attendance record.  In a declaration made under

6    penalty of perjury, Figueroa states that, in the first four months of 2006 (January 1, 2006 through

7    April 27, 2006), González had thirteen unscheduled absences.  She further states that in 2005

8    González had twenty six  unscheduled absences, of which only eight were FMLA-protected.  In

9    contrast, González contends that, prior to being informed that she would face disciplinary procedures

10   in 2006, she had twelve justified absences, which were erroneously labeled as "unscheduled" by

11   Figueroa.  Of those twelve, four were for González's enjoyment of her annual FMLA leave and had

12   been requested in advance.  González further contends that her other absences were attributable to

13   the intermittent sick leave allowed under FMLA for treatment of her condition, and should not have

14   been marked as "unscheduled" in her official records.  Also, González states that Figueroa required

15   her to provide medical documentation to prove that her absences were justified, when no such

16   requirement was made of the other two employees under Figueroa's supervision.  To counter this

17   statement, Figueroa asserts that she implemented company policy evenly to all employees, by

18   requiring corroborating medical documentation whenever absences were not scheduled in advance.

19         On April 27, 2006, González informed Figueroa that she had an appointment with an EEO

20   Counselor regarding her EEO case.  On May 1, 2006, the Pre-Disciplinary Interview between

21   Figueroa and González was conducted.  In the meantime, EEO Counselor Nancy Rivera ("Rivera")

22   investigated the allegations in González's pre-complaint counseling form.  On May 9, 2006,

23   González amended her pre-complaint counseling form to include the allegation that she was denied

24   overtime on Saturdays because of her prior EEO activity and disability, and was issued a PDI for

25   failure to be regular in attendance, even though her absences were covered under the FMLA.  That

26   same day, González received a letter from EEO Field Operations regarding the precomplaint

27   counseling phase, documenting her allegations and stating that "management denies discrimination."

28         A few months later, González filed a PS Form 2565, entitled "EEO Complaint of

1   Discrimination in the Postal Service" ("EEO Complaint").  In her EEO Complaint, dated May 19,

2   2006, González once again marked the box for discrimination in the form of retaliation.  However,

3   in the statement of facts that she attached to the EEO Complaint, González states that after seeking

4   pre-complaint counseling[2] she felt harassed, intimidated, and highly scrutinized by Figueroa

5   regarding her disability and physical health condition.  Her attached statement also indicates that

6   Figueroa insisted that González provide original medical documentation to justify her disability-

7   related absences, when no such requirement was made of other co-workers and FMLA leave status

8   had been previously approved for González's job-related medical condition.

9        On May 24, 2006, an inquiry report was prepared by Rivera.  On June 13, 2006, the USPS

10   sent González an "Acceptance of Complaint" notice, wherein the scope of USPS's investigation was

11   defined as based on the allegation that González suffered retaliation upon the following events: (1)

12   receipt of letter eliminating González from the ASP program; (2) continuous denial of opportunity

13   to work as Acting Express Mail Service Expeditor; (3) termination of overtime work opportunities;

14   and (4) issuance of PDI for failure to be regular in attendance.  On November 6, 2006, USPS issued

15   its "Notice of Final Agency Decision," holding that González had failed to prove that she was

16   subject to retaliation.  USPS's final decision did not address González's claim of harassment due

17   to her disability.

18        On February 9, 2007, González filed a complaint against USPS alleging retaliation and

19   disparate treatment by reason of disability in violation of the Rehabilitation Act of 1973, 29 U.S.C.

20   § 794 et seq., and Title VII, 42 U.S.C. § 2000e et seq.  González also alleges violations to the Family

21   Medical Leave Act of 1993, 29 U.S.C. § 2615, in the form of both interference and discrimination.

22   Specifically, González claims that because of her medical condition and previous EEO activity, she

23   was given pre-disciplinary talks and negative attendance evaluations that were made part of her

24

25

26        [2] The attached letter to the administrative charge refers to the filing of "an EEO complaint,"
but points to February 2006 as the approximate date of such filing.  See Docket No. 48-4, ¶ 8.  The

27   court interprets this to mean the commencement of the complaint process, which involved pre-
complaint counseling, as the record reflects that it was on February 28, 2006 that González filed PS

28   Form 2564-A, "Information for Pre-complaint Counseling."  See Docket No. 48-3.

1  computerized record and which affected her possibilities for transfers and upward mobility.  USPS

2  moved for summary judgment on July 8, 2008 (Docket Nos. 29, 30, 31).  González filed a motion

3  requesting further discovery (Docket No. 36), which was denied (Docket No. 45).  However, per the

4  court's orders (Docket No. 45, 49), USPS filed a revised motion for summary judgment on August

5  26, 2008 (Docket Nos. 47, 48, 50).  González opposed USPS's motion (Docket No. 52, 54), USPS

6  replied (Docket No. 71), and González sur-replied (Docket No. 72).

7  **III.    Discussion**

8         Defendant USPS moves for summary judgment on the grounds that: González failed to

9  satisfy Title VII's administrative exhaustion requirement as regards her disability discrimination

10  claim; González has failed to establish a *prima facie* case of retaliation or disability discrimination;

11  and there is no claim to reasonable accomodation on the facts of this case.  The court will examine

12  these grounds to determine whether USPS has established that there is no genuine issue of material

13  fact and that it is entitled to a judgment as a matter of law.

14                **A.        Failure to Exhaust Administrative Remedies**

15         Title VII requires an employee to file an administrative charge as a prerequisite to

16  commencing a civil action for employment discrimination.  See 42 U.S.C. § 2000e-5(f).  The

17  purpose of that requirement is to provide the employer with prompt notice of the claim and to create

18  an opportunity for early conciliation.  Fantini v. Salem State College, 2009 WL 428486 at *3-5 (1st

19  Cir. 2009) (citing Powers v. Grinnell Corp., 915 F. 2d 34, 37 (1st Cir. 1990)).  "The scope of the

20  civil complaint is accordingly limited to the charge filed with the EEOC and the investigation which

21  can reasonably be expected to grow out of that charge."  Fantini, 2009 WL 428486 at *3 (quoting

22  Powers, 915 F. 2d at 38); see also Johnson v. General Electric, 840 F. 2d 132, 139 (1st Cir. 1988).

23  In Powers v. Grinnell Corp., the First Circuit described what it called the "scope of the charge" rule:

24         An administrative charge is not a blueprint for the litigation to follow.  See EEOC
           v. General Electric Co., 532 F.2d 359, 364 (4th Cir. 1976) (quoting EEOC v. Huttig

25         Sash & Door Co., 511 F.2d 453, 455 (5th Cir. 1975)) ("The charge is not to be
           treated as a common-law pleading that strictly cabins the investigation that results
26         therefrom, or the reasonable cause determination that may be rested on that
           investigation.   The charge merely provides the EEOC with 'a jurisdictional
27         springboard to investigate whether the employer is engaged in any discriminatory
           practices.'").  See also Graniteville Co. v. EEOC, 438 F.2d 32, 38 (4th Cir. 1971)
28         (purpose of charge is to initiate EEOC investigation, "not to state sufficient facts to

make out a prima facie case"); <u>Sanchez</u>, 431 F.2d at 465 ("[T]he purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC.").   Thus, "the exact wording of the charge of discrimination need not 'presage with literary exactitude the judicial pleadings which may follow.'" <u>Tipler v. E.I. duPont deNemours & Co.</u>, 443 F.2d 125, 131 (6th Cir. 1971) (quoting <u>Sanchez</u>, 431 F.2d at 466). Rather, the critical question is whether the claims set forth in the civil complaint come within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." <u>Sanchez</u>, 431 F.2d at 466; <u>Babrocky</u>, 773 F.2d at 863; <u>Miller</u>, 755 F.2d at 23-24; <u>Less</u>, 705 F.Supp. at 112.

<u>Powers</u>, 915 F.2d at 38-39; <u>see also</u>  <u>Lattimore v. Polaroid Corporation</u>, 99 F. 3d 456, 464 (1st Cir. 1996).  What can "reasonably be expected to grow out of the charge of discrimination" must be determined by considering "the plain import of the administrative charge as a whole" and "the breadth of the administrative inquiry reasonably required to investigate the charge."  <u>Id.</u> at 38. Recently, the First Circuit followed this precedent and rejected the argument that plaintiff's "one passing mention" of gender discrimination in the last paragraph of her five page attachment to the administrative complaint could not satisfy the exhaustion requirement because the administrative investigaton did not address that particular claim. <u>Fantini</u>, 2009 WL 428486 at *3-5.  The <u>Fantini</u> court found that the plaintiff's administrative charge sufficiently provided defendants with prompt notice of the claims against them, including the gender discrimination claims under Title VII, regardless of the district court's finding that plaintiff's gender discrimination claim had not been addressed by either party nor by the administrative agency prior to the filing of the federal complaint. <u>Id.</u> at *3.

In the instant case, USPS argues that because González did not check the box for "disability" in the pre-litigation counseling form or the EEO Complaint, and only checked the box for "retaliation," her claim for disability is barred for failure to exhaust administrative remedies.  USPS also contends that, since the administrative procedure did not take into account the charge of discrimination, plaintiff cannot now bring the claim in federal court. The court disagrees. In making its argument, defendant disregards the fact that plaintiff's EEO complaint included an attached statement of facts, which should be considered as part of the administrative charge.  The fact that USPS chose not to accept the discrimination claim for investigation at the administrative stage, based on a highly technical reading of the adminstrative charge, should not preclude it from being

1  alleged now in the federal complaint, if the court finds that adequate notice was given to the agency

2  through said charge.  See Powers, 915 F.2d at 39 n.4 (quoting Schnellbaecher v. Basking Clothing

3  Co., 887 F.2d 124, 128 (7th Cir. 1989)) ("[I]t is not the scope of the actual investigation pursued that

4  determines what complaint may be filed, but what EEOC investigation could reasonably be expected

5  to grow from the original complaint."); see also Oblesby v. Coca-Cola Bottling Co., 620 F.Supp.

6  1336, 1344 (N.D. Ill. 1985) ("What controls is not what the EEOC did but what it was given the

7  opportunity to do."), cited in Powers, 915 F.2d at 39 n.4.  Moreover, in cases where, as here, the

8  employee acted *pro se*, the administrative charge is liberally construed in order to afford the

9  complainant the benefit of any reasonable doubt.  Lattimore, 99 F. 3d at 464.

10       After reviewing the adminsitrative charge filed by González, including the attached statement

11  of facts, this court finds that González's charge sufficiently provided USPS with prompt notice of

12  the claims against them, including the disability discrimination claim under Title VII.  González's

13  administrative charge states that after seeking pre-complaint counseling she felt harassed,

14  intimidated, and highly scrutinized by Figueroa regarding her disability and physical health

15  condition.  See Docket No. 48-4, ¶ 8.  The charge further states that Figueroa insisted that González

16  provide original medical documentation to justify her disability-related absences, when no such

17  requirement was made of other co-workers and FMLA leave status had been previously approved

18  for González's job-related medical condition.  Id.  González also alleged in her adminsitrative charge

19  that Figueroa "is conducting a constructed effort and contorted scheme to discipline [her] [. . .] as

20  reprisal for the [*sic*] physical condition that is covered under the FMLA [. . .]" Id. at ¶ 12.  Thus,

21  González mentions in her administrative charge alleged incidents of disparate treatment by her

22  supervisor with regard to her asthma-related absences, vis-a-vis her other co-workers, and

23  specifically states that she believes her supervisor was taking additional disciplinary measures

24  against her because of her disability.  See Powers, 915 F.2d at 37.

25       Consistent with these allegations, González's complaint includes an averment that

26  "notwithstanding a [. . .]  Family Medical Leave Act request to attend [sic] her chronic condition

27  and/or medical appointments, Ms. Figueroa arbitrarily requested additional medical documentation

28  when there is a certification [sic] on file under the [FMLA] [. . .]  [T]hese and other acts of

1 discrimination and retaliation which have occured under Ms. Figueroa's supervision include, but are

2 not limited to requiring additional medical documentation only to the plaintiff, while the rest of the

3 employees were not required to present such medical documentation." Docket No. 1, ¶ 38; see also

4 id. at ¶ 40.

5       The court finds that "the claims set forth in the civil complaint come within the 'scope of the

6 EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"

7 Powers, 915 F.2d at 38-39 (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir.

8 1970)), quoted in Fantini, --- F.3d ----, 2009 WL 428486 at *5.  Therefore, USPS's motion for

9 summary judgment as to the discrimination claim for failure to exhaust administrative remedies is

10 **DENIED**.

11       **B.      Retaliation Claim**s

12       To establish a *prima facie* case of retaliation, plaintiff has to prove that (1) she engaged in

13 protected conduct; (2) she suffered an adverse employment action; and (3) the adverse action was

14 causally connected to the protected activity.  Fantini, --- F.3d ----, 2009 WL 428486 at *8; see also

15 42 U.S.C. § 2000e-3; Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 22 (1st Cir. 2002);

16 Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998).  Once a plaintiff

17 satisfies her *prima facie* burden, the defendant must produce a legitimate, nondiscriminatory reason

18 for the adverse action.  The ultimate burden then falls on the plaintiff to show that the employer's

19 articulated reason was, in fact, pretext covering up retaliation.  Wright v. CompUSA, Inc., 352 F.3d

20 472, 478 (1st Cir. 2003).  For a retaliation claim to "'survive a motion for summary judgment, the

21 plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that

22 the employment action was retaliatory.'"  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217

23 F.3d 46, 57 (1st Cir.2000) (quoting King v. Town of Hanover, 116 F.3d 965, 968 (1st Cir.1997)).

24       USPS does not appear to dispute that González engaged in conduct that is protected by Title

25 VII when she filed her administrative charge.  It maintains, however, that González never suffered

26 "adverse employment actions" as a result of that conduct.  In the alternative, accepting *arguendo* that

27 González did suffer adverse employment actions, USPS contends that those actions are not causally

28 connected to González's protected activity, so that they cannot give rise to a retaliation claim.  The

First Circuit has held that "[t]o be adverse, an action must materially change the conditions of plaintiffs' employ." Gu v. Boston Police Dept., 312 F. 3d 6, 14 (1st Cir. 2002). "Material changes include 'demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees.'" Id. (citing Hernández-Torres, 158 F. 3d at 47). Whether an employment action is "adverse," and therefore actionable, is gauged by an objective standard. Blackie v. Maine, 75 F.3d 716, 725 (1st Cir.1996) ("Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action."). Here, González asserts a separte retaliation claim based on each of the following allegedly adverse employment actions: (1) elimination from the ASP application process; (2) negative attendance evaluations and disciplinary measures; (3) denial of Saturday overtime during a particular work project in April and May 2006 and denial of opportunity to serve as Acting Expedited Services Specialist while Figueroa was away. As discussed below, each claim fails.

### 1. *Elimination from the ASP Application Process*

As to González's elimination from the ASP application process, the court understands that, even if such action constitutes an adverse employment action because it deprives plaintiff of an opportunity to achieve higher-ranking positions within the USPS, González has failed to offer any admissible evidence to prove a causal link between the adverse action and her previous EEO activity. González alleges that the members of the ASP Review Committee were briefed by Daisy García, the ASP Coordinator, as to her prior EEO activity. In support of this contention, González offers only her own statement under penalty of perjury that, while Daisy García was meeting the Committee members before her interview, she overheard her name mentioned four times by persons inside the interview room. Docket No. 54-2, ¶ 4-6. González argues that, because Daisy García had knowledge of her 2005 EEO charge, and was meeting with the Committee members before her interview, the mention of her name necessarily means that García was briefing the Committee members as to her prior EEO activity. The court understands that these conclusions are entirely speculative and inadmissible as proof that Daisy García in effect briefed the Committee members as to González's EEO history. In contrast, all of the Committee members have made declarations

under penalty of perjury stating that hey had no knowledge of plaintiff's EEO case history prior to the interview or during their consideration of her application to the ASP.  See Docket Nos. 31-3, 31-4, 31-5, 31-6.

González also alleges in her complaint that the Committee members, as administrative-level employees, had access to the system where EEO records are kept and, therefore, were necessarily privvy to her EEO background.  In Plaintiff's Additional Statement of Uncontroverted Material Facts (Docket No. 54), González uses as supporting evidence for the contention that all administrative-level employees have access to EEO records the declaration of Eriberto Cedeño (Docket No. 31-7).  That document, however, was withdrawn from the record, after plaintiff objected to it as unannounced expert testimony.  See Docket No. 36; Docket No. 45 ("The court accepts defendant's offer to withdraw Cedeño's declaration and the attached exhibits.").  The only other evidence offered by González to prove her allegation consists, once again, of her own declarations to the effect that management-level employees can access the system where EEO information is kept.  González, however, cannot assert first-hand knowledge to this effect because she is not an administrative-level employee at USPS, and the record does not reflect corroborating testimony from any such employee.  Meanwhile, all the members of the Review Committee have stated under penalty of perjury that they do not have access to the USPS EEO database and that they deny ever having searched it to see if González had any prior EEO activity.  See Docket Nos. 71-4, 71-5, 71-6, 71-7.

The court, thus, finds González's proffer in this respect insufficient to establish a *prima facie* case of retaliation, as she is "lacking in the concrete documentation necessary to prove the causal link between her protected activity and her retaliatory treatment."  See Ramos Roche Prods., Inc., 936 F. 2d 43, 49 (1st Cir. 1991).  Accordingly, the court must **GRANT** summary judgment as to plaintiff's Title VII claims of retaliation stemming from her elimination from the ASP application process.

### 2.     *Negative Attendance Evaluations and Disciplinary Measures*

As to Figueroa's negative attendance evaluations and the disciplinary measures she took against González, the court understands that there is an issue of material fact as to whether or not the same were warranted.  Figueroa and González have given conflicting declarations in regards to

1   the validity of Figueroa's characterization of González's absences as "unscheduled" and whether or

2   not the same were covered under FMLA.  This issue will be addressed by the court forthwith.

3   However, asuming *arguendo* that they were unwarranted and are, therefore, adverse employment

4   actions, plaintiff still has not proffered sufficient evidence of a causal link between her prior EEO

5   activity and those employment actions.

6         The record reflects that Figueroa decided to conduct the PDI on March 24, 2006, prior to

7   becoming aware of González's 2006 EEO charge on April 27, 2006, when González informed

8   Figueroa that she had an appointment with an EEO Counselor.  Thus, González's most recent EEO

9   charge, the charge which gave rise to the present case, could not be the source of Figueroa's alleged

10  retaliatory animus because Figueroa's disciplinary decisions pre-date her knowledge of the protected

11  activity.  Meanwhile, González's EEO activity prior to the 2006 administrative charge dates back

12  to February 2005, at the latest, which is when settlement was reached in that case.  This means that

13  more than a year had passed between that activity and the disciplinary employment action at issue

14  in the present action, making the inference of a causal relationship too tenuous.  As this is the sum

15  and substance of plaintiff's retaliation evidence in regard to the negative attendance evaluations and

16  disciplinary actions taken by Figueroa, it is insufficient to forestall summary judgment.  Benoit v.

17  Technical Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003); see also Ramírez Rodríguez v. Boehringer

18  Ingelheim Pharmaceuticals, Inc., 425 F. 3d 67, 85 (1st Cir. 2005) (holding that a two month period

19  between termination from employment and filling of an age discrimination complaint did not

20  establish a causal connection so as to violate Age Discrimination in Employment Act's retaliation

21  provision); Dressler v. Daniel, 315 F.3d 75, 80 (1st Cir. 2003) ("[T]he inference of a causal

22  connection becomes more tenuous with time."); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st

23  Cir. 1991) (observing that a nine-month period between the protected conduct and adverse action

24  suggested the absence of any causal connection).  Therefore, the court **GRANTS** USPS's summary

25  judgment motion as to González's retaliation claims based on the negative attendance evaluations

26  and disciplinary measures taken by Figueroa.

27        ***3.    Denial of Saturday Overtime and of Opportunity to Serve as Acting Expedited***

28              ***Services Specialist***

1    Finally, as to the denial of Saturday overtime and of the opportunity to serve as Acting

2    Expedited Services Specialist while Figueroa was away, the court notes that both actions could

3    constitute adverse employment actions.  However, in the instant case, the denial of Saturday

4    overtime does not rise to the level of an adverse action because during the two month period during

5    which the special project was running, González was the only clerk who received overtime work on

6    Saturdays.  The fact that the overtime work did not continue after April 27, 2006 is immaterial, since

7    *none* of the employees were offered such work after that date.  Similarly, not offering González the

8    opportunity to serve as Acting Expedited Services Specialist cannot constitute an adverse

9    employment action in this case, because there is no proof that her non-selection for this position is

10   attributable to her EEO activity.  In fact, it is González's contention that she had *never* been offered

11   this position, either before or after her various EEO cases were filed and/or settled.  Cf. DeNovellis

12   v. Shalala, 124 F. 3d 298, 206 (1st Cir. 1997) (holding that divesting an employee of assignments

13   and responsabilities establishes an adverse employment action).  For these reasons, the court also

14   **GRANTS** USPS's motion for summary judgment as to the retaliation claims based on the denial of

15   overtime and of the opportunity to serve as Acting Expedited Services Specialist.

16          **C.      Disparate Treatment Claim**

17          A plaintiff asserting a disability-based disparate treatment claim must make the following

18   *prima facie* showings: that (1) she suffers from a disability or handicap, as defined by the Americans

19   with Dissabilities Act ("ADA");[3] (2) she was nevertheless able to perform the essential functions of

20   her job, either with or without reasonable accomodation; and (3) the defendant took an adverse

21   employment action against her because of, in whole or in part, her protected disability.  Tobin v.

22   Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir.2005); see also McDonnell Douglas Corp. v.

23   Green, 411 U.S. 792, 803 n.13 (1973) (acknowledging *prima facie* case varies depending on factual

24   situation); Wiener v. Polaroid Corp., 790 F. Supp. 363, 366 (D. Mass. 1992) (adapting fourth prong

25   _____

26          [3]As a federal employee, González is covered under the Rehabilitation Act and not the ADA.
27   Nevertheless, since the same standards apply to both the Rehabilitation Act and ADA, the court
     relies on precedent construing both statutes. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d
28   6, 12 n.1 (1st Cir.2004); see also Enica v. Principi, 544 F.3d 328, 338 n.11 (1st Cir. 2008).

of *prima facie* case to specific alleged adverse employment action).  Next, the burden of production shifts to the employer who must articulate a legitimate, non-discriminatory reason for the adverse employment action.  At the final stage, the plaintiff must present sufficient evidence to demonstrate that the employer's proffered reason is a mere pretext and that the true reason is discriminatory. Tobin, 433 F. 3d at 105.  Ultimately, the court must decide "whether, viewing the aggregate package of proof offered by [the plaintiff] and taking all inferences in [her] favor, [she] has raised a genuine issue of fact as to whether the [adverse employment action] was motivated by [. . .] discrimination." Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 431 (1st Cir. 2000).

USPS contends that González cannot be "disabled" within the meaning of the Rehabilitation Act because she does not have a "significant limitation" of even one "major life activity."  The definition of disability, under the ADA, is "(A) a physical or mental impairment which substantially limits one or more of an individual's major life activities; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2); see also 29 C.F.R. § 1630.2(g). A plaintiff must at least satisfy one of the three alternative definitions.  Corujo-Martí v. Triple S, Inc., 519 F. Supp. 2d 201, 212 (D.P.R. 2007).  Under the second definition of disability, "the recorded impairment must be one that substantially limited a major life activity." Santiago Clemente v. Executive Airlines, Inc., 213 F. 3d 25, 33 (1st cir. 2000); see also Bailey v. Georgia-Pacific Corp., 306 F. 3d 1162, 1169 (1st Cir. 2002) ("A record or history of an impairment is not sufficient to show disability; the record must be of an impairment [that] substantially limited a major life activity.").

In the present case, there is evidence that shows that USPS had a record of González's condition, since it had approved her Family Leave after classifying her asthma as a "Chronic Condition Requiring Treatment."  Moreover, González asserts that her condition substantially impairs her ability to breathe and speak, and that when she is experiencing an asthma attack as a result of emotional stress and other environmental factors, she has to concentrate on inhaling, without speaking.  The Equal Employment Opportunity Commission has classified breathing and speaking as "major life activities" for purposes of the ADA.  See 29 C.F.R. § 1630.2(I); see also Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002) (holding that the phrase "major life activities" refers to activities that are of central importance to daily life).  USPS cites an

unpublished opinion from the Second Circuit, in support of the proposition that asthma does not *invariably* impair a major life activity.  Burke v. Niagara Mohawk Power Corp., 142 Fed. Appx. 527, 529 (2nd Cir. 2005) (finding that plaintiff's asthma did not impair a major life activity -i.e. breathing- because attacks were infrequent, daily symptoms could be controlled with medication, and plaintiff did not show that asthma affected her ability to work in general); see also Muller v. Costello, 187 F. 3d 298, 314 (2nd Cir. 1999).  What this means is that the determination whether the plaintiff has a disability must be done on a case-by-case basis.  Calero-Cerezo, 355 F. 3d at 20 (citing Toyota Motor Mfg., Ky, Inc., 534 U.S. at 198).  In the instant case, the certifications from González's health care provider indicate that during periods of asthma exacerbation, which can last aproximately five to six hours, González is unable to perform her work duties.  Those certifications also indicate that González's "asthma is variable," but that she suffers attacks on a weekly basis.  See Docket No. 54-14.  Though the above-cited Second Circuit caselaw presented by USPS carries persuasive value, the court must construe the facts in the light most favorable to the plaintiff. Accordingly, it finds that there is, at the very least, an issue of material fact as to whether or not González's asthma-related breathing and speaking impairment constitutes a limitation on a major life activity.

Notwithstanding the court's conclusion on this point, González has failed to establish the second prong of her *prima facie* case: that she is a qualified individual within the meaning of ADA. In order to be a "qualified individual" under ADA, "the burden is on the employee to show: first, that she possesses the requisite skill, experience, education and other job-related requirements for the position, and second, *that she is able to perform the essential functions of the position with or without reasonable accommodation*."  Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 (1st Cir.2000) (internal citations and quotation marks omitted) (emphasis added).  "It is well settled that an employer need not accommodate a disability by foregoing an 'essential function' of the employment position."  Laurin v. Providence Hosp., 150 F.3d 52, 56 (1st Cir.1998) (internal citations omitted).  "An employer may base a decision that the employee cannot perform an essential function on an employee's actual limitations, even when those limitations result from a disability."  Calef v. Gillette Co., 322 F.3d 75, 86 (1st Cir.2003) (citing Leary v. Dalton, 58 F.3d 748, 753-54 (1st

Cir.1995)).  For the purposes of ADA, consideration is given to the employer's judgment as to what functions of a job are essential.  See 42 U.S.C. § 12111(8).  The First Circuit recently held that "attendance is an essential function of any job." Ríos-Jiménez v. Principi, 520 F.3d 31, 42 (1st Cir. 2008) (holding that employee who frequently missed work was not a qualified individual able to perform the essential functions of her job, either with or without a reasonable accommodation, as required to support disability discrimination and reasonable accommodation claims under the Rehabilitation Act).  See also Leary v. Dalton, 58 F.3d 748 (1st Cir. 1995) (under Rehabilitation Act, employee with excessive absences related to claimed disability was not qualified individual).  "Gross attendance problems can prevent a disabled person from being qualified for a position even when the attendance problem is related in whole or in part to the disability." Castro-Medina v. Procter & Gamble Commercial Co., 565 F. Supp. 2d 343, 369 (D.P.R. 2008) (quoting 1 H.H. Perritt, Jr., Americans With Disabilities Act Handbook, § 3.06[E] at 124 (4th ed. 2003)).

It is undisputed that González had been missing work due to her illness.  In fact, by her own admission she was absent at least twelve times within the first three months of 2006.  Even if her absenteeism was tied to her illness, her inability to come to work on a more regular basis is a legitimate concern for her employer.  "Simply put, 'one who does not come to work cannot perform any of his job functions, essential or otherwise.'" Castro-Medina, 565 F. Supp. 2d at 370 (quoting Wimbley v. Bolger, 642 F. Supp. 481 (W.D.Tenn.1986), aff'd, 831 F.2d 298 (6th Cir. 1987). Consequently, examining the facts in the light most favorable to the plaintiff, the court finds that she failed to establish that she could perform her essential job functions within the meaning of the ADA. In her opposition, González argues that her absences must be accomodated as covered by the FMLA. Whether or not that is the case, the qualified individual requirement for a *prima facie* case of disability discrimination must be met, with or without reasonable accomodation.  See Perkins v. Ameritech Corp, 161 Fed. Appx. 578, 581 (7th Cir. 2006) (holding as irrelevant that some of plaintiff's absences were caused by illness or potentially covered by the FMLA), cited in Castro-Medina, 565 F. Supp. 2d at 370.

Having found that González failed to prove she is a qualified individual under ADA, the court need not delve into the sufficiency of plaintiff's proffer as to the third prong of her *prima facie*

case. Summary judgment is hereby **GRANTED** as to plaintiff's claims of disability disrimination under the Rehabilitation Act and ADA.

### C.    Reasonable Accomodation Claim

In addition to prohibiting disparate treatment of individuals with disabilities, the Rehabilitation Act and ADA "impose an affirmative duty on employers to offer a reasonable accommodation to a disabled employee." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19-20 (1st Cir.2004); see also 42 U.S.C. § 12112(b)(5)(A); García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 646 n. 9 (1st Cir.2000) ("[T]he ADA does more than prohibit disparate treatment. It also imposes an affirmative obligation to provide reasonable accommodation to disabled employees."). Reasonable accomodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, [. . .] and other similar accomodations for individuals with disabilities."  42 U.S.C. §12111(9)(B).  In order for a plaintiff to assert a claim for failure to accommodate under the Rehabilitation act, she would have to prove: "(1) that she suffered from a 'disability' within the meaning of the statute; (2) that she was a qualified individual in that she was able to perform the essential funcions of her job, either with or without a reasonable accommodation; and (3) that, despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for the disability." Calero-Cerezo, 355 F.3d at 20.

In light of the court's ruling that plaintiff has failed to prove she is a qualified individual within the meaning of ADA, defendant's motion for summary judgment is also **GRANTED** as to the claim for reasonable accomodation.

### D.    Interference and Retaliation Claims under the FMLA

"The FMLA contains two distinct types of provisions: those establishing substantive rights and those providing protection for the exercise of those rights." Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005) (citing Hodgens v. General Dynamics Corp., 144 F. 3d 151, 159-60 (1st Cir. 1998).  The first, which the First Circuit has described as "essentially prescriptive, 'set[s] substantive floors' for conduct by employers, and creat[es] 'entitlements' for employees." Id. at 330 (quoting Hodgens, 144 F. 3d at 159).  Such provisions, codified at 29 U.S.C. § 2612, entitle eligible employees to, *inter alia*, "a total of 12 workweeks of leave" for "a serious

health condition that makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D).  With limited exceptions, see 29 C.F.R. §§ 825.214(b), 825.216, upon the employee's return from a qualified leave, the employer must reinstate the employee to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority.  Hodgens, 144 F.3d at 159 (citing 29 U.S.C. § 2614(a)(1); and 29 C.F.R. § 825.100(c)); see also Hillstrom v. Best W. TLC Hotel, 354 F.3d 27, 32 (1st Cir.2003).  The FMLA also provides for "intermittent" leave, which allows an employee to take such leave intermittently, "when medically necessary," such as to attend appointments with a health care provider for necessary treatment of a serious health condition.  29 U.S.C. § 2612(b); 29 C.F.R. § 825.117 (defining requirements for intermittent leave).

In addition to the grant of substantive rights, the FMLA provides protection in the event an employee is discriminated against for exercising those rights.  See 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220.[4]  In particular, "[a]n employer is prohibited from discriminating against employees [. . .] who have used FMLA leave."  29 C.F.R. § 825.220(c).  Nor may employers "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  29 C.F.R. § 825.220(c).  "An employer who flouts these rules can be held liable for compensatory damages and, unless the violation occurred in good faith, additional liquidated damages. [. . .] Appropriate equitable relief, such as reinstatement, also may be available." Navarro v. Pfizer Corp., 261 F.3d 90, 95 (1st Cir. 2001) (internal citations omitted).

To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, see 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he

---

[4] "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).  "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

engaged in activity protected by the Act, see 29 U.S.C. § 2615(a)(1) & (2).  To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.  Colburn, 429 F. 3d at 331 (citing Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960-61 (10th Cir. 2002); King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999)).  In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right.  King, 166 F.3d at 891.  In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus."  Id.  When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, the court must apply the same burden-shifting framework established by the Supreme Court in McDonnell Douglas for evaluating Title VII discrimination claims.  Hodgens, 144 F. 3d at 160.  In order to establish a *prima facie* case of retaliation, an employee must prove that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.

In the instant case it is undisputed that González was entitled to Family Leave, since USPS had approved her FMLA status.  What González contends is that Figueroa's characterization of such leave as "unscheduled," and her requests for medical re-certifications justifying her medical leave each time she saw a doctor, are in violation of the FMLA both as a violation of her substantive rights and as reataliation for the exercise of those rights.

A review of the applicable regulations reveals that, "[w]hen the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a).  It is not a violation of the FMLA for USPS to require González to provide notice for her absences when they are related to her asthma.  The regulations provide that "[w]hen the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances.  For example, an employer may require employees to call a designated number or a specific individual to request

leave.  However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone."  29 C.F.R. § 825.303(c).  However, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; *nor can FMLA leave be counted under 'no fault' attendance policies*."  20 C.F.R. § 825.220(c) (emphasis added).  USPS argues that Figueroa would implement company policy uniformly, requiring a doctor's note from any employee who's absence was unscheduled (i.e. not informed to their supervisor in advance) or who's scheduled absence was classified as a doctor's visit.  All absences that were not informed to Figueroa in advanced had to be marked as "unscheduled" in the employee's report, regardless of whether or not such absences were FMLA-related.  As pointed out by plaintiff, in as much as this constitutes a no-fault attendance policy it is violative of the FMLA's leave entitlement provisions.  For this reason, the court **DENIES** defendant's motion for summary judgment as to the FMLA interference claim, in as much as there is an issue of material fact as to whether or not USPS's attendance policy was a no-fault attendance policy in violation of FMLA entitlement provisions.

As for González's claim of retaliation, it is undisputed that González meets the first prong of the *prima facie* requirement, entitlement to Family Leave.  As to the second and third prongs, González has presented evidence that in October 2007 she was denied a transfer to the Tampa, Florida division of USPS due to her "unacceptable attendance."  See Docket No. 54-12.  The denial of a transfer can constitute a materially adverse employment action under Hernández-Torres, 158 F. 3d at 47.  There is also proof that in evaluating González's performance, Figueroa would take plaintiff's condition into consideration, by making comments such as: "Mrs. González has a FMLA case and she is using it to support her absentinsm [sic]."  See Employee Key Indicators Report, Docket No. 54-9.  Additionally, the record reflects a discrepancy between Figueroa's and González's characterization of the latters' absences that are covered by the FMLA, which has raised an issue as to whether or not Figueroa was accurately reflecting the same in González's record.  This proffer is sufficient to raise an issue of material fact as to the causal link between the adverse employment action and plaintiff's exercise of her FMLA rights.  Therefore, defendant USPS's motion for

**Civil No. 07-1118 (GAG)(BJM)**          23

summary judgment as to the FMLA discrimination claim is **DENIED**.

**IV.    Conclusion**

For the aforementioned reasons, the court **GRANTS IN PART** and **DENIES IN PART** USPS's motion for summary judgment (Docket No. 50).  The court hereby **GRANTS** USPS's motion for summary judgment with respect to the retaliation, disparate treatment, and reasonable accomodation claims raised under Title VII and the Rehabilitation Act.  The court **DENIES** summary judgment  as to plaintiff's interference and retaliation claims under FMLA.

**SO ORDERED**.

In San Juan, Puerto Rico this 31st day of March, 2009.


*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ
United States District Judge